**Joe Edwin WILLIAMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–89–164 CR.**

Court of Appeals of Texas,
Beaumont.

Sept. 20, 1990.

Phillip W. Swisher, Conroe, for appellant.

Peter Speers, III, Dist. Atty., Kathleen Hamilton, Asst. Dist. Atty., Conroe, for State.

## OPINION

WALKER, Chief Judge.

This is an appeal from a conviction for the felony offense of Aggravated Sexual Assault. Appellant pleaded not guilty and, following a jury trial which began on September 20, 1988, appellant was found guilty. The jury assessed punishment at thirty-five (35) years confinement in the Texas Department of Corrections, now known as the Institutional Division of the Texas Department of Criminal Justice.

Appellant raises fifteen points of error, seven of which are under the combined and somewhat multifarious complaints of ineffective assistance of counsel and bolstering. Six other points of error complain solely of ineffective assistance. The remaining two points of error complain of trial court error. We will combine discussion of these various points of error based upon the grouping described above.

Appellant's general complaint under points of error 1, 2, 3, 4, 13, 14, and 15 is that of ineffective assistance upon the part of appellant's trial counsel based upon the

allegation that trial counsel failed to object to testimony from State's witnesses that amounted to bolstering of the unimpeached testimony of the victim. Bolstering, by definition, occurs when one item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of relevant evidence offered by the same party. *Valcarcel v. State*, 765 S.W.2d 412 (Tex.Crim.App.1989); *Livingston v. State*, 739 S.W.2d 311 (Tex.Crim. App.1987); *McKay v. State*, 707 S.W.2d 23 (Tex.Crim.App.1985).

▆ Under the facts of the instant case, the victim was the last witness called by the State in its case-in-chief. We agree with the rule set out in *Valcarcel, supra*, that impermissible bolstering does not occur when the alleged bolstering occurs *before* the unimpeached witness has had a chance to testify. *Valcarcel, supra*, at 415. Obviously, since the victim in the instant case testified last, testimony from witnesses who took the stand prior to the victim may have been inadmissible on other grounds, but not inadmissible based upon a claim of bolstering. Since bolstering was the specific ground complained of by appellant as the basis for the ineffective assistance allegation, we find no merit in these points of error as it was not ineffective assistance to fail or refuse to object to the testimony on the basis of bolstering of the testimony of the victim. Points of error 1, 2, 3, 4, 13, 14, and 15, are overruled.

▆ Points of error 5, 6, 7, 8, 11, and 12 are complaints of ineffective assistance of counsel for failure to object to various pieces of testimony and items of physical evidence. The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) provides us with the standard for deciding the issue of ineffectiveness of counsel. The U.S. Supreme Court held that the defendant must show both that (1) his counsel's performance was deficient, and that (2) this deficiency was such as to deprive the defendant of a fair trial. *See, Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. The second prong of the requirement is explained as a reasonable probabili-

ty that, but for the deficient performance, the result of the proceeding would have been different. *Strickland, supra*, at 687, 104 S.Ct. at 2064. The appellant must show that the result of the trial would have been different had the representation by counsel been more professional. *Rico v. State*, 707 S.W.2d 549 (Tex.Crim.App.1983). Furthermore, any standard of review for ineffectiveness of counsel is gauged by the totality of the representation of the defendant. *Ex parte Duffy*, 607 S.W.2d 507, 516 (Tex.Crim.App.1980). The constitutional right to counsel does not mean errorless counsel or counsel whose competency is judged by hindsight. Rather, the right to effectiveness of counsel means counsel reasonably likely to render reasonably effective assistance. *Ex parte Cruz*, 739 S.W.2d 53, 58 (Tex.Crim.App.1987). There is a presumption that counsel is competent and that counsel's assistance is effective. To rebut this presumption, it must be shown that counsel's representation was unreasonable under prevailing professional norms. *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). An isolated failure to object to certain procedural mistakes or improper evidence does not constitute ineffective assistance of counsel. *Ingham v. State*, 679 S.W.2d 503 (Tex.Crim.App.1984); *Weathersby v. State*, 627 S.W.2d 729 (Tex.Crim. App.1982).

▆ The testimony complained of in points of error 5 and 6 occurred during the State's direct examination of Deputy Janet Young of the Montgomery County Sheriff's Department. Deputy Young was dispatched to the hospital to speak with the victim shortly after the victim reported the incident. Deputy Young's particular area of expertise within the Department was investigating cases of sexual assault of child and female victims. Appellant's complaint centers on this exchange:

Q. Okay. All right. During the time that you interviewed her, I think you've indicated, to some extent, how she appeared and what her emotional state was. Could you tell the jury again, how

did she act when she was giving the statement?

A. While I was interviewing Ms. Carlisle, she was crying and she was shaking. She appeared really scared. She kept telling me, you know, he is going to come back to the house; he is going to kill me. He is going to kill my kids because he told me that's what he was going to do and she was very disturbed, to me, over the whole incident.

For this analysis, we presume the alleged hearsay statement complained of was the statement of the victim to Deputy Young, and not the supposed statement made by appellant to the victim. We find that the response to the State's question by Deputy Young was a proper description of the victim's emotional state. This very disturbed emotional state was characterized by what the victim thought appellant would do to her and her children if the incident was reported to the authorities. TEX.R.CRIM. EVID. 803(3) dealing with exceptions to hearsay, states:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (3) **Then existing mental, emotional, or physical condition.** A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Thus, Deputy Young's answer described the victim's then existing state of mind. It was not offered for the truth that, indeed, appellant was going to kill the victim and her children. Rule 803(3) allows for the admissibility of the victim's statement to Deputy Young.

Appellant, in point of error 6, complains that Deputy Young's answer quoted above should have been objected to as its prejudicial nature far outweighed its probative value. Appellant provides us with a three sentence argument on this point. He states, "The testimony was clearly calculated to inflame the minds of the jury. It is difficult to imagine how the testimony could fail to be harmful to Appellant. There is no plausible basis in strategy or tactics for counsel to allow this testimony in evidence without objection." Appellant appears to be telling us that Deputy Young's answer was so damaging to appellant that it speaks for itself and as such, there is no need to elaborate on the argument any further. We reiterate the rule cited in *Ingham, supra,* and *Weathersby, supra,* that the failure to object to certain procedural mistakes or improper evidence does not constitute ineffective assistance. Points of error 5 and 6 are overruled.

Points of error 7 and 8 are grounded on the complaint that trial counsel failed to object to a search of appellant's truck, and the subsequent admission into evidence of a knife found in the truck, and the "consent to search" form signed by appellant. The record reflects that during the State's direct examination of Deputy Young, appellant's trial counsel approached the bench and requested a hearing on a Motion To Suppress which trial counsel had filed prior to trial. The trial court agreed to the hearing at that point, and one was conducted outside the presence of the jury. This took place before either the knife or "consent to search" form was admitted into evidence. At the conclusion of the hearing, the trial court overruled appellant's Motion To Suppress, and both the knife and the "consent to search" form were admitted into evidence. We find that trial counsel acted properly and effectively in that a suppression hearing was requested and had by the trial court. Points of error 7 and 8 are overruled.

Points of error 11 and 12 are complaining that trial counsel failed to object to Deputy Young's testimony that appellant refused to make a statement after his arrest, and that appellant refused to take a polygraph test after his arrest. Appellant's complaint is that by trial counsel's not objecting to these two pieces of testimony, appellant's right to object to this

matter on appeal was not preserved. We find absolutely no merit to these points. An examination of the record places these points in their proper context:

Q. [By State] Okay. After you contacted her [the victim] and advised her of the suspect's arrest, what, if anything, did she do or do you know?

A. [By Deputy Young] Well, she was—she started thanking me over the phone and sounded real happy about it. And as far as I know, she moved back into her home. But it was, I would say, later that day that she came in and viewed the photo spread.

Q. Okay.

A. I later—I also offered—

Q. That's fine. Thank you, Ms. Young. Did you have any other activities in the case after that?

A. I talked to the defendant and offered him the opportunity to make a statement and take a polygraph and he refused to do so.

Q. Pass the witness, Your Honor.

At that point in the trial a recess was taken for lunch. The record reflects that immediately upon the jurors exit from the courtroom, appellant's trial counsel objected to the admission before the jury of appellant's refusal to give a statement or take a polygraph. We find this not only a proper and timely objection, but one that was calculated to lessen the impact of the response on the jury. Effective trial strategy sometimes involves the decision whether or not to object to a particular bit of oral testimony because the objection itself may cause jurors to take greater notice of the testimony than they would have otherwise, or the objection may cause some jurors to believe that the testimony was damaging to the accused and thus give greater weight to it during deliberations. In the instant case, trial counsel's objection was not only timely, the trial court sustained it and strictly admonished the jury to disregard appellant's refusal to give a statement or submit to a polygraph examination. Error in the admission of improper testimony is usually cured by the trial court's instruction to the jury to disregard, except in extreme cases where it appears that the question of evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds. *Thompson v. State*, 612 S.W.2d 925 (Tex.Crim.App.1981); *Campos v. State*, 589 S.W.2d 424 (Tex.Crim.App.1979). We have no "extreme" situation in the response by Deputy Young that could not be cured by a proper instruction to the jury to disregard the testimony. Certainly no ineffectiveness of counsel is demonstrated. Points of error 11 and 12 are overruled.

■ Points of error 9 and 10 complain of error on the part of the trial court for denying appellant's motion for mistrial after Deputy Young testified that appellant refused to give a statement or submit to a polygraph examination after appellant's arrest. As noted in the discussion above of points 11 and 12, the trial court sustained appellant's timely objection to Deputy Young's response and instructed the jury to disregard the testimony. The trial court did, however, deny appellant's motion for a mistrial. The trial court's instruction to the jury, given orally immediately upon their return from the lunch recess was as follows:

Ladies and gentlemen of the jury, I am going to give you what we call an instruction to the jury, okay, which you are to accept as fact. Just before lunch there was some testimony from the last witness regarding whether or not the defendant chose to take a polygraph test or not, and I am telling you that you are to completely disregard that statement.

You know, our freedoms in America and the Constitution of the United States are not founded upon whether or not someone takes a polygraph test or not. So you are not to consider any evidence or testimony regarding any polygraph test. All right? Do I make myself clear? Everyone understand? Okay. Thank you.

At this point, appellant's trial counsel approached the bench and requested a further instruction regarding appellant's refusal to give a statement. The trial court

complied, and stated the following to the jury:

> In addition, ladies and gentlemen, there was also testimony elicited about whether or not the defense wanted to make a statement in this case. That is not required under the Fifth Amendment of the Constitution as made applicable to the states and the United States by way of the Fourteenth Amendment to the Constitution of the United States. So, you are to disregard whether or not this defendant chose to take a polygraph test or chose to make a statement, whether he did or whether he did not. Okay?

As discussed above in our consideration of points 11 and 12, this was not an extreme case where the testimony was clearly calculated to inflame the minds of the jury to the point of rendering any curative instruction useless. The above quoted instructions by the trial court were neither perfunctory nor vague. They focused on the exact testimony objected to and instructed the jury not only to disregard the testimony, but further instructed the jury as to the reason behind the instruction. Thus, the testimony referring to appellant's refusal to make a statement while in custody and appellant's refusal to submit to a polygraph examination was rendered harmless by the trial court's instructions to disregard. Points of error 9 and 10 are overruled. Having found neither trial court error nor ineffective assistance of trial counsel, we affirm the judgment of the trial court.

AFFIRMED.