Cyrus Wain KUGLER, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–93–01131–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

April 20, 1995.

Rehearing Overruled May 11, 1995.

Discretionary Review Refused
Aug. 23, 1995.

Timothy A. Hootman, D. Jennings Bryant, La Porte, for appellant.

John B. Holmes, Jr., Timothy G. Taft, David V. Wilson II, Monica Thursland, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and HUTSON–DUNN and ANDELL, JJ.

## OPINION

ANDELL, Justice.

A jury found appellant, Cyrus Wain Kugler, guilty of assault. Punishment was assessed by the trial court at 90 days in jail and a $350 fine. In two related points of error, appellant contends that the trial court erred by failing to grant a new trial and by refusing to give a requested jury instruction regarding polygraph testimony. We reverse and remand.

## FACTS

Appellant was married to the complainant, Marsha Sue Kugler, but the couple had separated in July of 1993. They were living in separate residences, and Mrs. Kugler had filed for divorce. On September 18, 1993, Mrs. Kugler was attacked and brutally beaten outside of her home at approximately 9:30 p.m. She identified appellant as her attacker, and he was charged with her assault.

At trial, appellant maintained that he was not the person who attacked Mrs. Kugler. The only witness to testify about the identity of the attacker was the complainant herself.

The defense attorney was able to establish that it was dark at the time of the attack and, therefore, argued that the complainant could not sufficiently identify her attacker. On two occasions during the trial, Detective J.E. Williamson, the officer who conducted the investigation of the case, gave nonresponsive answers to the prosecutor's questions that revealed that appellant was offered, but refused to take, a polygraph examination. Defense counsel objected to both of these polygraph references, and the trial court sustained the objections and instructed the jury to disregard the answers and not consider them for any purpose.

After the detective mentioned the polygraph the second time, the judge had the jury step out of the courtroom and warned the prosecutor that he was in a "dangerous area" and suggested that the defense make a "motion in limine." The court granted the motion and instructed the witness not to mention the polygraph again. At that time, defense counsel moved for a mistrial which the trial court denied. Defense counsel then requested that an additional instruction be given to the jury regarding the inadmissibility of polygraphs and ensuring that appellant's refusal to take one would not be used as a circumstance against him. The court denied this request as well. Finally, after the jury returned a verdict of guilty, appellant filed a motion for new trial based upon the court's failure to grant a mistrial. This motion was also denied.

In his first point of error, appellant contends that the trial court committed reversible error by failing to grant his motion for new trial.

## USE OF POLYGRAPH EVIDENCE

■ This case raises issues regarding references to polygraph tests in criminal trials. It is well established that the *results* of a polygraph test are not admissible at trial for any purpose, whether they are offered on behalf of the State or the defendant. *Nethery v. State*, 692 S.W.2d 686, 700 (Tex.Crim. App.1985). The reason for the inadmissibility of the *results* of a polygraph examination stems from the inherent unreliability of the test and its tendency to be unduly persuasive

to a jury. *Banda v. State*, 727 S.W.2d 679, 681 (Tex.App.—Austin 1987, no pet.). The more difficult question, however, is whether mentioning a witness' refusal to take a polygraph exam requires a court to grant a mistrial.

■ Numerous cases have held that where a witness gives a nonresponsive answer that mentions that a polygraph test was *offered* or *taken*, but does not mention the results of such test, there is no error in failing to grant a mistrial. *See, e.g., Richardson v. State*, 624 S.W.2d 912, 914–915 (Tex.Crim.App.1981) (no error where complainant stated in a nonresponsive answer to prosecutor's question that she had taken a polygraph exam); *Hannon v. State*, 475 S.W.2d 800, 803 (Tex.Crim.App. 1972) (no error where witness gave nonresponsive answer that indicated he had been put on a lie detector machine); *Roper v. State*, 375 S.W.2d 454, 457 (Tex.Crim.App. 1964) (no error where officer disclosed that defendant had been given a polygraph exam where answer was nonresponsive and did not reflect the result of the test); *Barker v. State*, 740 S.W.2d 579, 583 (Tex.App.—Houston [1st Dist.] 1987, no pet.) (no error where officer stated in an nonresponsive answer to prosecutor's question that the defendant had been offered a polygraph exam); *Richardson v. State*, 823 S.W.2d 710, 712 (Tex.App.—San Antonio 1992, pet. ref'd) (no error where officer disclosed in an nonresponsive answer to prosecutor's question that defendant submitted to polygraph exam). In these cases, the courts held that an instruction to disregard the answer was sufficient to reduce any persuasive effect that the answers might have had in the minds of the jurors. *Id.*

Unlike the above situations, however, in the present case we are dealing with a nonresponsive answer that disclosed that a defendant *refused* to submit to a polygraph exam when one was offered.

## ANALYSIS

■ In our attempt to ascertain the extent of undue influence and persuasion caused by polygraph evidence, we must look at all of the circumstances surrounding the disclosure of the polygraph information, in-

cluding whether there was an apparent design to elicit the answer given and whether bad faith is evident. *Sparks v. State*, 820 S.W.2d 924, 927 (Tex.App.—Austin 1991, no pet.).

The challenged statements in this case came about in the following manner:

[PROSECUTOR]: What else did you discuss when the Defendant came to you in the La Porte Police Department?

[DETECTIVE WILLIAMSON]: His lawyer had him take his shirt off—and let me view his upper body, his hands and so forth. And I asked him if he'd take a polygraph, and he didn't want to take a polygraph.

[DEFENSE COUNSEL]: I'll object to the response as nonresponsive. I also would ask that he was asked to take a polygraph, that the jury be instructed to disregard the polygraph. It is not in evidence in this case or any criminal evidence in any case.

The trial court sustained the objection and instructed the jurors to disregard the answer and not to consider it for any purpose.

Later, while the prosecutor was questioning Detective Williamson regarding his conversations with the complainant, the following exchange transpired:

[PROSECUTOR]: And what did you tell her in regards to the offense or in regards—I'm sorry—the discussion with the Defendant?

[DETECTIVE WILLIAMSON]: I advised her that he denied the offense and that he refused to take a polygraph, and his lawyer—

[DEFENSE COUNSEL]: I object to that fact of a polygraph being injected in this case. That's highly inflammatory and prejudicial.

THE COURT: Sustained.

[DEFENSE COUNSEL]: Ask the jury be instructed to disregard it.

THE COURT: Jurors, disregard the last statement of the witness. Do not consider it for any purpose. Take the jury out.

[DEFENSE COUNSEL]: Then I'd ask also at this time for a mistrial.

(Jury out).

THE COURT: Be seated please. Motion for mistrial is denied. Defense, at this opportunity, I would suggest you urge a motion in limine. Do you ask for that?

[DEFENSE COUNSEL]: I do so ask, Your Honor.

THE COURT: Witness, do you understand "motion in limine?" You're not to mention polygraph again in this case. State, make sure all the witnesses understand this motion in limine is now in. State, you are in a very dangerous area, what you're questioning this witness about. I urge you to be very careful.

[DEFENSE COUNSEL]: Your Honor, I would ask for a specific instruction for the jury at this time that a polygraph is not evidence in a criminal case, and refusal or denial to take it, cannot be considered a circumstance against him and should not be viewed as such.

THE COURT: That request at this time is denied. Bring the jury in. State, you ought to perhaps move away from any conversations in the police station between this man and the Defendant.

The detective's references to appellant's refusal to submit to the polygraph test were not necessarily responsive to the prosecutor's direct questions. Therefore, it does not appear that the prosecutor was acting in bad faith or directly attempting to elicit the polygraph information.

The facts of this case are similar to those found in *Williams v. State*, 798 S.W.2d 368 (Tex.App.—Beaumont 1990, no pet.). In that case, the investigating police officer disclosed in a nonresponsive answer to the prosecutor's question that the defendant was given the opportunity to take a polygraph exam but refused to do so. *Id.* at 372. When the defendant objected, the trial court sustained the objection and instructed the jury to disregard the answer. The Court of Appeals noted that improper testimony is usually cured by the trial court's instruction to the jury to disregard, except in extreme cases where it appears that the evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression

produced on their minds. *Id.* (citing *Thompson v. State,* 612 S.W.2d 925 (Tex.Crim.App. 1981); *Campos v. State,* 589 S.W.2d 424 (Tex.Crim.App.1979)). The court held that there was no "extreme" situation presented by the officer's testimony that was not cured by a proper instruction to the jury to disregard the answer and thus, the trial court did not err by refusing to grant a mistrial.

Although the trial court in the present case, like the court in *Williams,* instructed the jury not to consider appellant's refusal to take the polygraph exam for any purpose, the persuasive effect of that information was heightened because the offer of the polygraph exam and appellant's refusal to take the test were mentioned a second time after the first objection was sustained and the complainant was the only witness who could identify appellant as her attacker. Under these circumstances, appellant's refusal to take a polygraph test could lead the jury to improperly infer that he had something to hide.

## CONCLUSION

Because the complainant was the only witness who could identify appellant as her attacker, appellant's refusal to submit to a polygraph exam effectively bolstered her identification. Under these circumstances, the testimony that revealed appellant's refusal to submit to a polygraph examination was unduly persuasive and cannot be cured by an instruction to disregard. Therefore, the trial court erred by refusing to grant appellant's motion for new trial.

We sustain appellant's first point of error. Because this point is dispositive, we need not address appellant's second point of error.

We reverse the judgment of the trial court and remand for a new trial.

HUTSON–DUNN, J., files a dissenting opinion.

HUTSON–DUNN, Justice, dissenting.

I dissent. Although I agree with the majority that the detective's references to appellant's refusal to submit to the polygraph examination was error, under the circumstances of this case, the references were harmless. The majority contends that the information was unduly persuasive and could not be cured by an instruction to disregard because the complainant was the only witness who could identify appellant as her attacker. I do not feel that this is true.

Ms. Kugler identified appellant as her attacker at trial. The jury knew that Ms. Kugler had been married to appellant for several years and that the couple was going through a contested divorce. Both Officer Young, who was dispatched to the home of Ms. Kugler's neighbor on the night of the accident, and the neighbor, Katherine Moore, testified that Ms. Kugler had consistently identified appellant as her attacker. The jury could infer that the complainant, as appellant's spouse, could recognize him as her attacker. Therefore, despite the fact that Ms. Kugler was the only eyewitness to the assault, I do not believe that the detective's reference to appellant's refusal to submit to a polygraph effectively "bolstered" her identification of appellant. Under these circumstances, like the court in *Williams v. State,* 798 S.W.2d 368, 372 (Tex.App.—Beaumont 1990, no pet.), I believe that the detective's testimony was not of such a character that it could not be cured by a proper instruction to disregard.

Appellant's attorney objected to the detective's answers concerning appellant's refusal to take the polygraph on the basis that polygraph testimony is not to be used as evidence in any criminal trial. The jury heard this explanation and was instructed by the trial court on both occasions to disregard the detective's responses and not to consider it for any purpose. I believe that the trial court's instruction to disregard the remark was sufficient to cure any persuasive effect that the information might have had in the minds of the jurors. I would, therefore, hold that the trial court did not err by denying appellant's request for a new trial or his request for an additional instruction.