COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-05-260-CR

 

 

JAVIER ALBERTO SABILLON                                                 APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 372ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








Appellant Javier Alberto
Sabillon appeals his conviction and life sentence for aggravated sexual
assault.  In his first point, Sabillon
contends that the trial court erred by admitting evidence gathered as a result
of a search warrant that lacked probable cause. 
In Sabillon=s second
point, he complains that the trial court erred by admitting the search warrant
affidavit into evidence at trial.  In his
third and fourth points, Sabillon complains that the trial court erred by
denying cross-examination of the complainant regarding her mental health and
DWI probation.  In Sabillon=s fifth point, he asserts that the trial court erred by excluding the
complainant=s statement
that she was fearful of the police because of her DWI probation.  We affirm. 


II.  Background Facts

The complainant, K.R., and
Sabillon dated from January 2004 to June 2004. 
On July 17, 2004, K.R. went to a bar in Fort Worth with her friend, Ty
Ramsey.  After K.R., Ramsey, and George
Whipple, K.R.=s friend,
left the bar to take Whipple to his apartment, Whipple noticed a truck
following them into his apartment complex. 
Ramsey, who was driving the car, stopped the car and Whipple got out to
see who was following them.  When Whipple
was walking back to Ramsey=s car, K.R. jumped out of the car and said, AIt=s
[Sabillon].@  When K.R. got to Sabillon=s truck, Sabillon threw her in his truck and drove off.  Ramsey called the police after Sabillon
left.  

Sabillon drove to his brother=s house and began yelling at K.R.. 
Sabillon grabbed K.R. by her neck and threatened to kill her.  K.R. then Ablacked out@ from loss
of oxygen. K.R. testified that she would slip in and out of consciousness and
would wake up to Sabillon sexually assaulting her.








The police called K.R.=s mother and told her that Sabillon had possibly kidnapped her
daughter.  K.R.=s mother then called Sabillon=s sister and told her what the police had said.  Sabillon=s sister then got her son, Victor Weinstein, to go over to the house
to see if Sabillon and K.R. were there. When Weinstein arrived, he saw Sabillon
and went upstairs to check on K.R.. Weinstein then called his mother and waited
for her at the house.  

The police arrived shortly
after Weinstein called his mother.  When
the police got to the house, they went upstairs and saw K.R. sleeping on the
bed face down with her clothes on.  The
police then woke her up, and K.R. told them that Sabillon had raped her. 

On June 27, 2005, a jury
found Sabillon guilty of aggravated sexual assault and answered true to the
repeat offender notice.  The trial court
assessed Sabillon=s punishment
at a life sentence in the Institutional Division of the Texas Department of
Criminal Justice.  The jury found
Sabillon not guilty of aggravated kidnapping.

III.  Motion to Suppress

In his first point, Sabillon
contends that the trial court erred by admitting pictures and physical evidence
that were gathered as a result of a search warrant which lacked probable cause.

 








A.  Standard of Review

We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In reviewing
the trial court=s decision,
we do not engage in our own factual review. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex.
Crim. App. 1999).  Therefore, we give
almost total deference to the trial court=s rulings on (1) questions of historical fact and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort Worth 2004, pet. ref=d).  But when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.  Estrada v. State, 154 S.W.3d 604, 607
(Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.








When reviewing a trial court=s ruling on a mixed question of law and fact, the court of appeals may
review de novo the trial court=s application of the law of search and seizure to the facts of the
case.  Estrada, 154 S.W.3d at
607.  When there are no explicit findings
of historical fact, the evidence must be viewed in the light most favorable to
the trial court=s
ruling.  Id.

We must uphold the trial
court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case even if the trial court gave the wrong reason for
its ruling.  Armendariz v. State,
123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974
(2004); Ross, 32 S.W.3d at 856; Romero, 800 S.W.2d at 543.

When reviewing a magistrate=s decision to issue a warrant, we apply the deferential standard of
review articulated by the United States Supreme Court in Illinois v. Gates,
462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983). Swearingen v. State,
143 S.W.3d 808, 810‑11 (Tex. Crim. App. 2004).  Under that standard, we uphold the probable
cause determination Aso long as
the magistrate had a >substantial
basis for . . . conclud[ing]= that a search would uncover evidence of wrongdoing.@ Gates, 462 U.S. at 236, 103 S. Ct. at 2331; see Swearingen,
143 S.W.3d at 810.

 

 








B.  Search Warrant Affidavit

Sabillon asserts that the
warrant affidavit does not contain sufficient information to provide the
magistrate with a substantial basis for concluding that probable cause
existed.  The pertinent parts of the
warrant affidavit provide as follows:

. . . . 

 

4.  THERE IS AT SAID SUSPECTED PLACE AND PREMISES
AN ITEM CONCEALED AND KEPT CONSTITUTING EVIDENCE OF SAID OFFENSE AND
CONSTITUTING EVIDENCE THAT A PARTICULAR PERSON COMMITTED SAID OFFENSE,
DESCRIBED AS FOLLOWS:

 

a.  SHEETS

b.  LADIES HOOP EARRING

c.  LADIES PANTIES

d.  PURSE

e.  WALLET

f.  LADIES SHOE

g.  Anything else of evidentiary value

 

5.  AFFIANT HAS PROBABLE CAUSE FOR SAID BELIEF BY
REASON OF THE FOLLOWING FACTS:

 

1) That Javier Sabillon and the victim date as boyfriend and
girlfriend but live separately.

 

2)
That on or about 07-18-04 at approximately 0100 hours, Javier saw the victim
with two (2) other males and followed them to a gated community located near
the 5200 block of Byers, Fort Worth, Tarrant County, Texas.

 

3)
That Javier picked the victim up and forced her into his vehicle against her
will and despite her verbal protests.

 








4)
That Javier drove her to 3762 West 4th, a residence belonging to his brother
Louis Caballero.

 

5)
That once there, Javier forced the victim to enter the residence and forced her
to have sex with him despite her verbal protests.

 

6)
That Javier choked the victim until she was unconscious and she woke up to
Javier having sex with her.

 

7)
That witness Daniel Ramsey saw Javier force the victim into his truck and heard
her scream for help.

 

8)
That Javier admitted to forcing the victim into the truck against her will and
admitted to taking her to a house she did not want to be at.

 

9)
That Javier said he had sex with the victim even though she told him to leave
her alone and had sex with the victim while she was sick and vomiting.

 

10)
See report #04084479 . . . . 

 

C.  Applicable Law

In assessing the sufficiency
of an affidavit for an arrest or a search warrant, the reviewing court is
limited to the four corners of the affidavit. Hankins v. State, 132
S.W.3d 380, 388 (Tex. Crim. App.), cert. denied, 543 U.S. 944
(2004); Jones v. State, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992), cert.
denied, 507 U.S. 921 (1993). The reviewing court should interpret the
affidavit in a common sense and realistic manner, recognizing that the
magistrate was permitted to draw reasonable inferences.  Hankins, 132 S.W.3d at 388; Jones,
833 S.W.2d at 124.








Probable cause will be found
to exist if the affidavit shows facts and circumstances within the affiant=s knowledge and of which the affiant has reasonably trustworthy
information sufficient to warrant a person of reasonable caution to believe
that the criteria set forth in code of criminal procedure article 18.01(c) have
been met. Tolentino v. State, 638 S.W.2d 499, 501 (Tex. Crim. App.
1982); see Tex. Code Crim. Proc.
Ann. art. 18.01(c) (Vernon 2005). Therefore, the affidavit must set
forth facts which establish that (1) a specific offense has been committed, (2)
the property to be searched or items to be seized constitute evidence of the
offense or evidence that a particular person committed the offense, and (3) the
property or items are located at or on the person, place, or thing to be
searched. Tolentino, 638 S.W.2d at 501. A mere affirmation of belief or
suspicion is not enough to sustain the issuance of a search warrant. Id. The
task of the issuing magistrate is to make a practical, common sense decision
whether, given all the circumstances set forth in the affidavit before him,
there is a fair probability that contraband or evidence of a crime will be
found in a particular place. Johnson v. State, 803 S.W.2d 272, 288 (Tex.
Crim. App. 1990), cert. denied, 501 U.S. 1259 (1991), overruled on
other grounds by Heitman v. State, 815 S.W.2d 681, 685 n.6 (Tex. Crim. App.
1991).

 








D.  Analysis

We must determine whether the
facts stated in the affidavit are sufficient to support a conclusion that the
items listed in the affidavit would be found at 3762 West 4th Street.  See Johnson, 803 S.W.2d at 288.  The affiant=s mere belief that the residence was where Sabillon took K.R. is not
enough to support the issuance of the search warrant.  See Tolentino, 638 S.W.2d at 501.  At trial, Sabillon argued that the affidavit
contained Amere
conclusions@ and did not
state what person the facts were obtained from. 
Sabillon=s counsel
stated,

It=s a number of different --
both the Texas Constitution as well as the United States Constitution.  We do make an objection based on that.  I believe it=s
Article 1, Section 9 and Article 1, Section 8 of the Texas Constitution.  It=s also chapter -- or Article
38.23 of the Texas Code of Criminal Procedure. It=s
also the Fourth and Fourteenth Amendment[s] to the United States
Constitution.  For these reasons and
because we believe that the statements contained in the search warrants, State=s
Exhibits Nos. 51, 52, and 53, as well as 54, 55 and 56 are mere
conclusions.  They do not state
facts.  They do not state upon a person
who[m] the facts were obtained from. 
Because they are [conclusory] statements is the -- the main reason we=re
objecting to them, not -- to this being an insufficient affidavit supporting
search warrant. 

 








On appeal, Sabillon complains
that paragraphs one through six Aare conclusions [and] not attributed to any source.@  However, when reading the
affidavit in a Acommon sense
manner,@ it is apparent that the K.R. is the source of the information that is
not attributed to Ramsey or Sabillon.  See
Hankins, 132 S.W.3d at 388; Jones, 833 S.W.2d at 124.  Because the 
magistrate is allowed to draw reasonable inferences from the affidavit,
we cannot say that she could not reasonably infer that the information in
paragraphs one through six came from K.R., the complainant.  Hankins, 132 S.W.3d at 388.

Additionally, Sabillon
complains on appeal that paragraph seven does not provide facts regarding the
West 4th address, paragraphs eight and nine do not reveal to whom or when
Sabillon made his statements and do not set forth the address of the house
where Sabillon took K.R., and paragraph nine does not mention where Sabillon
had Asex with the victim.@  Sabillon also objected to
pictures (i.e., State=s exhibits
28, 30, 31, and 32) being admitted at trial. 
However, Sabillon did not object on these grounds in the trial
court.  The complaint made on appeal must
comport with the complaint made in the trial court or the error is forfeited.  Heidelberg v. State, 144 S.W.3d 535,
537 (Tex. Crim. App. 2004); Bell v. State, 938 S.W.2d 35, 54 (Tex. Crim.
App. 1996), cert. denied, 522 U.S.827 (1997); Rezac v. State, 782
S.W.2d 869, 870 (Tex. Crim. App. 1990). 
Because Sabillon did not object on these grounds at trial, we hold that
he forfeited these grounds for our review on appeal.  Thus, we
overrule Sabillon=s first
point.

IV.  Admission of Search Warrant Affidavit








In Sabillon=s second point, he asserts that the trial court erred by admitting the
search warrant affidavit for all purposes during trial.  Specifically, Sabillon contends the trial
court erred by allowing paragraphs eight and nine, Sabillon=s confessions to kidnapping and sexually assaulting K.R., into
evidence because they are hearsay.  The
State argues that Sabillon was not harmed by the admission of his confessions
because the evidence came in without objection during other parts of the trial.

Even assuming without
deciding that Sabillon=s
confessions constituted hearsay, we believe any error was harmless.  Because the error complained of does not
involve a constitutional violation, rule 44.2(b) is applicable. Franks v.
State, 90 S.W.3d 771, 805 (Tex. App.CFort Worth 2002, no pet.); Hughes v. State, 12 S.W.3d 166, 168
(Tex. App.CFort Worth
2000, no pet.). Therefore, we are to disregard the error unless it affected
Sabillon=s substantial rights. Tex. R.
App. P. 44.2(b). A substantial right is affected when the error had a
substantial and injurious effect or influence on the jury=s verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App.
1997) (citing Kotteakos v. United States, 328 U.S. 750, 776, 66 S. Ct.
1239, 1253 (1946)); Coggeshall v. State, 961 S.W.2d 639, 643 (Tex. App.CFort Worth 1998, pet. ref=d) (en banc). In making this determination, we review the record as a
whole. Kotteakos, 328 U.S. at 764‑65, 66 S. Ct. at 1248.  








During the cross-examination
of Detective Sherry Schloeman, a detective with the Fort Worth Police
Department, Sabillon=s counsel
questioned Detective Schloeman about her summarization of paragraphs eight and
nine of the search warrant affidavit from Sabillon=s audiotaped interview.  After
both sides had rested, the State introduced the audiotape of the interview and
a transcript of the interview.  Before
the audiotape was played for the jury, the trial court asked Sabillon if he
wanted the jury to listen to the audiotaped interview, and Sabillon said that
he did.  The audiotaped interview was
then played to the jury.  Because the
audiotaped interview came in without objection and provides the same facts that
paragraphs eight and nine of the search warrant affidavit provide, we hold that
any error in admitting the search warrant affidavit is harmless.  See Franks, 90 S.W.3d at 805.

Alternatively, Sabillon
argues that he could not object to the audiotaped interview because it was
better to have the interview in evidence than to leave the Asearch warrant affidavit conclusions into evidence unchallenged.@








To preserve a complaint for our review, a party must have
presented to the trial court a timely request, objection, or motion that states
the specific grounds for the desired ruling if they are not apparent from the
context of the request, objection, or motion. 
Tex. R. App. P.
33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998)
(op. on reh=g), cert. denied, 526 U.S. 1070
(1999).  Further, the trial court must
have ruled on the request, objection, or motion, either expressly or
implicitly, or the complaining party must have objected to the trial court=s refusal to
rule.  Tex.
R. App. P. 33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex.
Crim. App. 2004).  Because appellant did not make an objection
and obtain a ruling from the trial court, we hold that he did not properly
preserve error for our review. 

Additionally, Sabillon cites
no authority for the proposition that he could not object at trial to the
introduction of the audiotaped interview. 
If
a party provides no argument or legal authority to support its position, the
appellate court may properly overrule the issue or point as inadequately
briefed.  Tex. R. App. P. 38.1(h); Tong v. State, 25 S.W.3d 707,
710 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 1053 (2001).  Because we
hold that any error in admitting the search warrant affidavit is harmless,
Sabillon did not properly preserve error, and Sabillon failed to provide any
authority to support his contention that he could not object to the admission
of the audiotaped interview, we overrule Sabillon=s second point.

V.  Limited Cross-Examination








In his third point, Sabillon
complains that the trial court abused its discretion by not allowing him to
cross-examine K.R. regarding her mental health diagnosis.  The State contends that the trial court did
not err because Sabillon failed to establish that K.R.=s mental illness was relevant. 
In Sabillon=s fourth
point, he contends that the trial court abused its discretion by not allowing
him to cross-examine K.R. regarding her DWI community supervision because it
shows bias on the part of K.R. against Sabillon.  The State asserts that Sabillon was not
entitled to cross-examine K.R. because Sabillon failed to show that K.R. was
vulnerable to revocation of her probation in Tarrant County.

A.  Standard of Review

We review the trial court=s decision to admit or exclude evidence under an abuse of discretion
standard.  Osbourn v. State, 92
S.W.3d 531, 537 (Tex. Crim. App. 2002); Green v. State, 934 S.W.2d 92,
101-02 (Tex. Crim. App. 1996), cert. denied, 520 U.S. 1200 (1997).  

B.  Mental Illness








Generally, and within reason,
the trial court should always allow the accused great latitude to show any
relevant fact that might tend to affect the witness=s credibility.  Mumphrey v.
State, 155 S.W.3d 651, 663 (Tex. App.CTexarkana 2005, pet. ref=d).  The Sixth Amendment
provides that an accused has a right to confront his accusers.  U.S.
Const. VI; see Crawford v. Washington, 541 U.S. 36, 42 124 S. Ct.
1354, 1359 (2004).  The right to
confrontation, while constitutionally secured, is not without limits.  Virts v. State, 739 S.W.2d 25, 28
(Tex. Crim. App. 1987).  The trial judge
retains wide latitude to impose reasonable limits on cross-examination based
upon concerns about, among other things, harassment, prejudice, confusion of
the issues, and the witness=s safety.  Id.  Specifically, cross-examination of a
testifying State=s witness to
show that the witness has suffered a recent mental illness or disturbance is
proper, provided such mental illness or disturbance is such that it might tend
to reflect on the witness=s
credibility.  Mumphrey, 155 S.W.3d
at 663; see Virts, 739 S.W.2d at 30. If the witness is shown to have
been suffering from a recent mental illness, prior to the occurrence of the
event in question, and such illness might be considered a Apersistent disabling disturbance of his mental and/or emotional
equilibrium, manifested through persistent maladjustment and more or less
irrational, even bizarre behavior and speech,@ then the trial court should permit the jury to hear this kind of
evidence.  Virts, 739 S.W.2d at
30.








Here, Sabillon points us to a
portion of his bill of exceptions to support his contention that the trial
court erred by not allowing him to cross-examine K.R. regarding her mental
illness.  Sabillon established in his
bill of exceptions that K.R. had been diagnosed with dysthymia, a mild case of
depression, and had been prescribed Celexa, an antidepressant.  K.R. testified that she did not have any
symptoms from the dysthymia because the medication was treating her condition,
and she Adidn=t have any
problems from it.@  She stated that her doctors did not tell her
that alcohol would have any effect on the medication or diagnosis.  The mere fact that the State=s testifying witness has in the recent past suffered or received
treatment for a mental illness or disturbance does not, for this reason alone,
cause this kind of evidence to become admissible impeachment evidence.  Id.  The testimony elicited does not demonstrate
that K.R.=s mental
illness affected her perception of events. 
See Scott v. State, 162 S.W.3d 397, 401 (Tex. App.CBeaumont 2005, pet. ref=d). Thus, we cannot say that the trial court abused its discretion by
not permitting the jury to hear the evidence regarding her illness.  We overrule Sabillon=s third point.  

C.  DWI Probation








In Sabillon=s fourth point, he contends that the trial court erred by not allowing
him to cross-examine K.R. about her DWI community supervision.  Sabillon asserts that the Sixth Amendment
entitled him to cross-examine K.R. to show Abias, ill feeling, motive, or animus on the part of [K.R.] against
him.@  Evidence that a witness whom
the State calls is subject to a criminal charge, or is on probation, can be
used to show the bias or interest of the witness in helping the State.  Maxwell v. State, 48 S.W.3d 196, 199
(Tex. Crim. App. 2001).  The proponent of
evidence to show bias must show that the evidence is relevant.  Woods v. State, 152 S.W.3d 105, 111
(Tex. Crim. App. 2004), cert. denied, 544 U.S. 1050 (2005).  The proponent does this by demonstrating that
a nexus, or logical connection, exists between the witness=s testimony and the witness=s potential motive to testify in favor of the other party.  Id.; Carpenter v. State, 979
S.W.2d 633, 634 (Tex. Crim. App. 1998).     In a hearing outside the presence of the
jury, Sabillon established that K.R. was convicted for DWI on April 27, 2004
and placed on probation.  K.R. was on
community supervision for the offense when she was assaulted.  K.R. testified that neither her probation
officers nor the court told her that she could not consume alcoholic beverages
while on probation.  The trial court
permitted defense counsel to cross-examine K.R. outside the jury=s presence and concluded that any cross-examination concerning K.R.=s DWI probation was not relevant to establishing a motive or bias by
K.R. against Sabillon.  Sabillon=s offer of proof did not establish the nexus between K.R. testimony
and her community supervision.  See
Woods, 152 S.W.3d at 112.  Sabillon
failed to establish that K.R. had bias or had an interest in helping the State
simply because she was on community supervision.  We hold that the trial court=s refusal to permit Sabillon to cross-examine K.R. regarding her DWI
community supervision did not constitute an impermissible restriction on
Sabillon=s rights under the Confrontation Clause.  Thus, we overrule Sabillon=s fourth point.  

D. Rule of Optional
Completeness








In Sabillon=s fifth point, he asserts that the trial court abused its discretion
by excluding K.R.=s statement
that she was fearful of the police because of her DWI probation.  He claims that the trial court should have
allowed him to introduce the statement under rule 107 after the State put into
evidence that K.R. said, AIt=s [Sabillon]@ when K.R.
saw that Sabillon had followed Ty Ramsey=s truck into the apartment complex.

ARule 107 is
one of admissibility and permits the introduction of otherwise inadmissible
evidence when that evidence is necessary to fully and fairly explain a matter >opened up= by the
adverse party.@  West v. State, 121 S.W.3d 95, 103
(Tex. App.CFort Worth
2003, pet. ref=d); Credille
v. State, 925 S.W.2d 112, 116 (Tex. App.CHouston [14th Dist.] 1996, pet. ref=d).  The so‑called
rule of optional completeness takes effect when other evidence has already been
introduced but is incomplete and misleading. 
Jones v. State, 963 S.W.2d 177, 182 (Tex. App.CFort Worth 1998, pet. ref=d); see Kinnamon v. State, 791 S.W.2d 84, 101 (Tex. Crim. App.
1990), overruled on other grounds by Cook v. State, 884 S.W.2d 485, 491
(Tex. Crim. App. 1994)..  Once an
evidentiary door has been opened by one side, this rule serves to allow the
other side to complete the picture.  West,
121 S.W.3d at 103.  The party who opens
the door may not then invoke the rule of optional completeness to further
exploit an improper line of questioning. 
See Hatley v. State, 533 S.W.2d 27, 29 (Tex. Crim. App.1976); Jones,
963 S.W.2d at 182.








During trial, Ramsey
testified that on July 18, 2004, he and K.R. went to a bar in Fort Worth.  After approximately one to two hours, Ramsey
and K.R. left the bar with George Whipple. 
Ramsey stated that he was driving the car, K.R. was in the front
passenger seat, and Whipple was in the back of the car.  As Ramsey pulled into Whipple=s gated apartment complex, Whipple noticed a truck follow them into
the complex and stated, AThat=s strange, I B you know, I
don=t recall seeing that car around here.@  Whipple then got out of the
car to see who was following them, and when he was walking back towards Ramsey=s car, K.R. got of the car and said, AIt=s
[Sabillon].@    In a hearing outside the presence of the
jury, Ramsey testified when they realized they were being followed, K.R. was
worried that it was the police because she was on probation.  The trial court did not allow Sabillon to
pursue this line of questioning, and Sabillon asserts, under the rule of
optional completeness, that the testimony should have been allowed.








Sabillon argues that K.R.=s Astat[ement]
[that] she was worried that it was the police because she was on probation for
DWI@ was necessary to clear up false impressions left by the State=s direct examination of Ramsey. 
However, the State offered K.R.=s testimony to identify Sabillon. We hold that the trial court did not
abuse its discretion by determining that the two statements were not Aon the same subject@ as required for the rule of optional completeness.  Patel v. State, 856 S.W.2d 486, 490
(Tex. App.CHouston [1st
Dist.] 1993, pet. ref=d), cert.
denied, 510 U.S. 1114 (1994); see Grunsfeld v. State, 813 S.W.2d
158, 163 (Tex. App.CDallas
1991), aff=d, 843 S.W.2d 521 (Tex. Crim. App. 1992).  Thus, we overrule Sabillon=s fifth point.

VI.  Conclusion

Having overruled Sabillon=s five points, we affirm the trial court=s judgment.

 

 

 

BOB MCCOY

JUSTICE

 

PANEL B:   LIVINGSTON, GARDNER, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
August 31, 2006











[1]See Tex. R. App. P. 47.4.